Citation Nr: 1522729 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 12-33 881A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in 
San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a psychiatric disorder, to include posttraumatic stress disorder (PTSD), major depression with anxiety features, and anxiety, to include as due to service connected arthritis.

2. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a condition of the anus and rectum.

3. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for pinguecula.

4. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for hearing loss.

5. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for diastolic hypertension.

6. Entitlement to service connection for a psychiatric disorder, to include PTSD, major depression with anxiety features, and anxiety, to include as due to service connected arthritis

7. Entitlement to service connection for lumbar strain, to include as secondary to all service connected disabilities.

8. Entitlement to an evaluation in excess of 20 percent disabling for right elbow arthritis.

9. Entitlement to an evaluation in excess of 20 percent disabling for left elbow arthritis.

10. Entitlement to an evaluation in excess of 20 percent disabling for right shoulder arthritis.

11. Entitlement to an evaluation in excess of 20 percent disabling for left shoulder arthritis.

12. Entitlement to an evaluation in excess of 10 percent disabling for right knee arthritis.

13. Entitlement to an evaluation in excess of 10 percent disabling for left knee arthritis.

14. Entitlement to an evaluation in excess of 10 percent disabling for right wrist arthritis.

15. Entitlement to an evaluation in excess of 10 percent disabling for left wrist arthritis.

16. Entitlement to an evaluation in excess of 10 percent disabling for right ankle arthritis.

17. Entitlement to an evaluation in excess of 10 percent disabling for left ankle arthritis.

18. Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Robert J. Burriesci, Counsel


INTRODUCTION

The Veteran had active service from August 1982 to September 1992.

This matter comes before the Board of Veterans' Appeals (Board) from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico.

The Board acknowledges the ruling in Clemons v. Shinseki, 23 Vet. App. 1 (2009), which clarified how the Board should analyze claims for PTSD and other acquired psychiatric disorders. As emphasized in Clemons, although a Veteran may only seek service connection for PTSD, the Veteran's claim "cannot be limited only to that diagnosis, but must rather be considered a claim for any mental disability that may be reasonably encompassed." Id. Here, the issues certified to the Board on appeal were entitlement to service connection for PTSD and entitlement to service connection for major depression with psychotic features to include anxiety associated with all service connected conditions of arthritis. As the Veteran is seeking service connection for an acquired psychiatric disorder, the issue has been recharacterized as listed above.

Additional treatment records and the report of a March 2013 VA examination have been associated with the claims file since the Statement of the Case dated in November 2012. In a statement by the Veteran's representative dated in April 2015 the representative stated: "Please note that we waive Regional Office consideration of any evidence submitted after the November . . . 2012 Statement of the Case." As such, the Board finds that RO consideration of this evidence has been waived and proceeding with adjudication is proper.

The issues of entitlement to service connection for a psychiatric disorder, to include PTSD, major depression with anxiety features, and anxiety, to include as due to service connected arthritis; entitlement to service connection for lumbar strain, to include as secondary to all service connected disabilities; entitlement to an evaluation in excess of 20 percent disabling for right elbow arthritis; entitlement to an evaluation in excess of 20 percent disabling for left elbow arthritis; entitlement to an evaluation in excess of 10 percent disabling for right knee arthritis; entitlement to an evaluation in excess of 10 percent disabling for left knee arthritis; entitlement to an evaluation in excess of 10 percent disabling for right wrist arthritis; entitlement to an evaluation in excess of 10 percent disabling for left wrist arthritis; entitlement to an evaluation in excess of 10 percent disabling for right ankle arthritis; entitlement to an evaluation in excess of 10 percent disabling for left ankle arthritis; entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). 


FINDINGS OF FACT

1. March 1993, August 1996, and October 2002 RO rating decisions denied entitlement to service connection for hearing loss, hypertension, a psychiatric disorder, a condition of the anus and rectum, and pinguecula. The appellant was notified of these decisions but did not perfect an appeal of any of them.

2. Evidence associated with the claims file after the final denial in March 1993, regarding the claims of entitlement to service connection for hearing loss and hypertension is not new and material because it does not, when considered with the previous evidence of record, raise a reasonable possibility of substantiating the claims.

3. Evidence associated with the claims file after the final denial in August 1996, regarding the claim of entitlement to service connection for psychiatric disorder is new and material because it raises a reasonable possibility of substantiating the claim.

4. Evidence associated with the claims file after the final denial in October 2002, regarding the claims of entitlement to service connection for a condition of the anus and rectum and pinguecula is not new and material because it does not, when considered with the previous evidence of record, raise a reasonable possibility of substantiating the claims.

5. During the periods on appeal the Veteran's shoulders did not manifest range of motion limited to midway between the side and shoulder level. 


CONCLUSIONS OF LAW

1. Evidence received since the March 1993 RO rating decision in connection with the Veteran's request to reopen claims of service connection for hearing loss and hypertension is not new and material and the claim is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).

2. Evidence received since the August 1996 RO rating decision in connection with the Veteran's request to reopen a claim of service connection for psychiatric disorder is new and material and the claim is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).

3. Evidence received since the October 2002 RO rating decision in connection with the Veteran's request to reopen claims of service connection for a condition of the anus and rectum and pinguecula is not new and material and the claim is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).

4. The criteria for an evaluation in excess of 20 percent disabling for right shoulder degenerative arthritis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5003-5201 (2014).

5. The criteria for an evaluation in excess of 20 percent disabling for left shoulder degenerative arthritis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5003-5201 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). The Veteran was provided adequate notice in September 2010, May 2011, and June 2011.

The duty to assist has also been met and appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA and private treatment records have been obtained and associated with the claims file. Records regarding a claim for Social Security Administration (SSA) benefits have been obtained and associated with the claims file. All adequately identified treatment records for which authorization has been provided have been obtained and associated with the claims file. In addition, the Veteran has been afforded VA medical examinations.

Hence, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Applications to Reopen

The Veteran seeks to reopen claims of entitlement to service connection for a psychiatric disorder, a condition of the anus and rectum, pinguecula, hearing loss, and diastolic hypertension.

The claims of entitlement to service connection for hearing loss and hypertension were previously denied in a March 1993 RO rating decision. Service connection for hearing loss was denied based upon a lack of hearing loss for VA benefit purposes. Service connection for diastolic hypertension was denied due to a finding that although it was diagnosed within the presumptive period, it was not compensable. Therefore, it was not incurred or aggravated by active military service or manifested within the presumptive period at a compensable level.

The evidence of record at the time of the March 1993 RO rating decision was the Veteran's service treatment records and the reports of VA medical examinations.

The claim of entitlement to a psychiatric disorder was previously denied in an August 1996 RO rating decision. The claim was denied based upon the finding that the evidence did not show that the nervous condition began in or was aggravated by active service.

The evidence of record at the time of the August 1996 RO rating decision included the records noted above as well as VA treatment records.

The claims of entitlement to service connection for a condition of the anus and rectum and pinguecula were previously denied in an October 2002 RO rating decision. The claim for a condition of the anus and rectum was denied based upon a finding that there was no disability reported by the Veteran at a VA medical examination and VA treatment records did not show treatment for any disability of the anus and rectum. The claim for pinguecula was denied as the condition developed many years after separation from service and the Veteran's eyes were found to be normal upon VA examination in November 1992.

The evidence of record at the time of the October 2002 RO rating decision included the records noted above as well as additional VA treatment records.

The Veteran did not perfect an appeal of any of these RO rating decisions and the rating decisions became final. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.160(d), 20.302, 20.1103. 

The claims may be reopened if new and material evidence is submitted. Manio v. Derwinski, 1 Vet. App. 140 (1991). New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with the previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). In determining whether evidence is new and material, the credibility of the new evidence is presumed. Justus v. Principi, 3 Vet. App. 510 (1992).

The Veteran filed an application to reopen the claims in August 2010. 

Evidence received since the prior final denials includes VA treatment records, records associated with an application for Social Security Administration (SSA) benefits, and reports of VA medical examinations regarding psychology and general medicine.

With regard to the application to reopen a claim of entitlement to service connection for a psychiatric disorder, the evidence is new as it was not of record at the time of the prior final denial. The newly associated VA treatment records reveal treatment and diagnosis of psychiatric disorders. In addition, treatment notes dated in December 2009, April 2010, and November 2011 reveal that chronic mental and medical illness was identified along with marital problems on the Axis IV. Axis IV is a report of the psychosocial and environmental factors contributing to the disorder. As such, the Board finds the evidence to be material because it indicates that there may be an association between the Veteran's service connected disabilities and his psychiatric disorder. As the evidence is both new and material, the application to reopen a claim of entitlement to service connection for psychiatric disorder is granted.

With regard to the application to reopen a claim of entitlement to service connection for a condition of the anus and rectum, the evidence is not new and material. The newly associated treatment records and examinations do not identify any disability of the anus and rectum. As the new evidence is not new and material, the application to reopen a claim of entitlement to service connection for a condition of the anus and rectum is denied.

With regard to the application to reopen a claim of entitlement to service connection for pinguecula, the newly associated evidence is new in that it was not of record at the time of the prior final denial. However, the evidence is not material as it does not associate any pinguecula with the Veteran's active service. As the new evidence is not material, the application to reopen a claim of entitlement to service connection for pinguecula is denied.

With regard to the application to reopen a claim of entitlement to service connection for hearing loss, the newly associated treatment records and examinations are not material. The records indicate that the Veteran has reported right and left ear hearing loss as well has indicated no hearing difficulties. See, e.g., Examination report December 2010 and VA Treatment record dated August 2012. However, the newly associated records do not reveal that the Veteran has a hearing loss disability for VA benefits purposes pursuant to 38 C.F.R. § 3.385. As the new evidence is not material, the application to reopen a claim of entitlement to service connection for hearing loss is denied.

With regard to the application to reopen a claim of entitlement to service connection for diastolic hypertension, the newly associated evidence is not material. Although the newly associated records reveal continued treatment for hypertension, they do not reveal that the Veteran had hypertension to a compensable degree one year after separation from service and do not indicate that the Veteran's hypertension was incurred in service. As the new evidence is not material, the application to reopen a claim of entitlement to service connection for diastolic hypertension is denied.

III. Higher Evaluation

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7 ; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran seeks entitlement to an evaluation in excess of 20 percent disabling for right and left shoulder disabilities. Each shoulder has been evaluated pursuant to 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5201. These hyphenated diagnostic codes may be read to indicate that degenerative arthritis is the service-connected disorder, and it has been rated as if the residual condition is limitation of motion of the shoulders under Diagnostic Code 5201.

Diagnostic Code 5201 is the Diagnostic Code applicable to the shoulder joint, and provides that, with regard to the minor (non-dominant) joint, limitation of motion of the arm at the shoulder level warrants a 20 percent rating; limitation of motion to midway between the side and shoulder level also warrants a 20 percent rating; and limitation of motion to 25 degrees from the side warrants a 30 percent rating. With regard to the major (dominant) joint, limitation of motion of the arm at the shoulder level warrants a 20 percent rating; limitation of motion to midway between the side and shoulder level warrants a 30 percent rating; and limitation of motion to 25 degrees from the side warrants a 40 percent rating. 

Normal forward elevation, or flexion, of the shoulder is from 0 to 180 degrees. Normal shoulder abduction is also from 0 to 180 degrees. Normal external rotation and internal rotation are from 0 to 90 degrees. 38 C.F.R. § 4.71, Plate I.

The Veteran was afforded a VA medical examination in December 2010. The Veteran reported pain, stiffness and limited motion in both shoulders. There were flare-ups of the joint disease weekly that lasted three to seven days with moderate severity. There was no tenderness, effusion, laxity, or ankylosis. X-rays of the shoulders revealed minimal degenerative and enthesopathic changes.

The Veteran was afforded a VA medical examination in July 2011. The Veteran reported that he was experiencing persistent bilateral shoulder pain aggravated by lifting of his arms above the shoulders. The condition was progressively worse. The shoulders showed no deformity, giving way, instability, stiffness, weakness, incoordination, episodes of dislocation or subluxation, locking, or effusions. There was pain, decreased speed of joint motion, and tenderness. The condition did not affect the motion of the joint and there were no flare-ups of joint disease.

Physical examination revealed crepitus, tenderness and guarding of movement.

Range of motion of the shoulder was flexion of 0 to 175 degrees, abduction of 0 to 160 degrees, internal rotation of 0 to 70 degrees, and external rotation of 0 to 65 degrees on the left. There was flexion of 0 to 170 degrees, abduction of 0 to 165 degrees, internal rotation of 0 to 70 degrees, and external rotation of 0 to 75 degrees on the right. There was objective evidence of pain in both shoulders. There was objective evidence of pain following repetitive motion on both sides. There were no additional limitations after three repetitions of range of motion. There was no ankylosis.

The Veteran was diagnosed with bilateral degenerative arthritis of the shoulder joints. The condition prevented sports. It had a severe effect on his recreation and exercise. It had a moderate effect on chores, shopping, bathing, dressing and grooming. It had a mild effect on traveling, toileting, and driving. There was no effect on feeding. 

The Veteran was afforded a VA medical examination in March 2013. The Veteran was noted to be diagnosed with left and right shoulder degenerative joint disease. The Veteran reported that he had not had any improvement regarding his shoulder disability. He had to use medication on a daily basis which lowered pain intensity to about a 5 on a 0 to 10 scale. He complained of pain on the superior shoulder which increases with lowering temperatures such as at night. He had not noticed any redness or swelling of his shoulder joints. He was right hand dominant. He had flare-ups mostly associated to cold but on some days he awoke with stiffness.

Range of motion was flexion of 0 to 90 degrees, with pain beginning at 80 degrees and abduction of 0 to 135 degrees, with pain beginning at 125 degrees, in the right shoulder. He had flexion of 0 to 90 degrees, with pain beginning at 80 degrees and abduction of 0 to 135 degrees, with pain beginning at 125 degrees, in the left shoulder. Repetitive use of the right and left shoulders revealed flexion of 0 to 90 degrees and abduction of 0 to 90 degrees. There was no additional limitation in range of motion of the shoulder and arm following repetitive use testing. He had less movement than normal and pain on movement in both shoulders. 

The Veteran had localized tenderness or pain on palpation of the joints/soft tissue/biceps tendon in both shoulders. He showed bilateral shoulder guarding. Muscle strengths were normal and there was no ankylosis. Hawkins' impingement, empty-can, external rotational/infraspinatus strength, and lift-off subscapularis tests were negative.

There were was no history of mechanical symptoms, recurrent dislocation of the glenohumeral joint, or crank apprehension of the shoulders. There was no acromioclavicular joint condition or any other impairment of the clavicle or scapula. There was tenderness on palpation of the acromioclavicular joint bilaterally. Cross-body adduction test was negative. He had not had a shoulder replacement. He had no scars related to the condition or treatment of the conditions. He had crepitation of the shoulders associated with range of motion. X-rays from December 2010 were noted. 

Entitlement to an evaluation in excess of 20 percent disabling is not warranted for either shoulder at any point during the period on appeal. During the periods on appeal the Veteran's shoulders did not manifest range of motion limited to midway between the side and shoulder level. As such, entitlement to an evaluation in excess of 20 percent disabling for right and left shoulder disabilities is denied.

The Board has considered whether higher evaluations are warranted pursuant to ankylosis of scapulohumeral articulation (Diagnostic Code 5200), impairment of the humerus (Diagnostic Code 5202), and impairment of the clavicle or scapula (Diagnostic Code 5203); however, as the Veteran's shoulder disabilities do not manifest these symptoms, these codes are not for application. 

The discussion above reflects that the rating criteria reasonably describe and contemplate the severity and symptomatology of the Veteran's service-connected disabilities. The Veteran's disabilities are manifested by occupational and social impairment in regard to the range of motion of and pain in his shoulders and the rating criteria for the disabilities contemplates these impairments. The effects of the Veteran's symptoms on occupational and social interaction have been taken into account and are considered in applying the relevant criteria in the rating schedule. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).


ORDER

New and material evidence having been received, the claim of entitlement to service connection for a psychiatric disorder is reopened.

New and material evidence having not been received, the application to reopen a claim of entitlement to service connection for a condition of the anus and rectum is denied.

New and material evidence having not been received, the application to reopen a claim of entitlement to service connection for pinguecula is denied.

New and material evidence having not been received, the application to reopen a claim of entitlement to service connection for hearing loss is denied.

New and material evidence having not been received, the application to reopen a claim of entitlement to service connection for diastolic hypertension is denied.

Evaluation in excess of 20 percent disabling for right shoulder arthritis is denied.

Evaluation in excess of 20 percent disabling for left shoulder arthritis is denied.


REMAND

The Veteran seeks entitlement to service connection for a psychiatric disability. The Veteran was afforded a VA medical examination in February 2011. The examiner indicates that the Veteran's nervous condition did not begin in military service nor was it aggravated by the Veteran's service. The examiner reported that the stressor identified by the Veteran was not related to active military service (marital problem). In addition, the examiner noted that the Veteran's psychiatric disability was not related to or aggravated by a service connected disability. However, the examiner provided no rationale for this opinion.

The Board notes that December 2009, April 2010, and November 2011 treatment notes identify marital problems and chronic mental and medical illness on the Axis IV. As noted above, Axis IV is a report of the psychosocial and environmental factors contributing to the disorder.

As such, the Board finds it necessary to afford the Veteran another VA medical examination regarding the etiology of his diagnosed psychiatric disability. See Barr v. Nicholson, 21 Vet. App. 303 (2007); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The Veteran seeks entitlement to service connection for lumbar strain, to include as secondary to all service connected disabilities.

Service treatment records reveal low back pain with a diagnosis of muscle strain in July 1985. The Report of Medical History at separation from service in July 1992 revealed complaint of back pain for seven years.

In November 1993 the Veteran was afforded an x-ray due to acute low back pain. The impression was no recent fracture and straightening of the lumbar spine secondary to spasm.

A VA examination report, dated in December 1993, found paravertebral myositis.

A December 1993 treatment note indicates that the Veteran had acute low back pain while lifting at his workplace. He was reported to have a diagnosis of acute PVM lumbar space. Thereafter, VA treatment records reveal complaint and treatment for low back pain.

In June 1994 the Veteran was noted to report that he had low back since seven year prior related to nonspasmic, non traumatic events. In July 1994 the Veteran reported that he had low back pain since seven months prior.

In September 1994 the Veteran was diagnosed with L4-5 central HNP versus focal bulging disc upon x-ray.

In a SSA record dated in September 1994 the Veteran reported back pain since service.

A June 1999 VA examination report indicates that the Veteran had low back spasms on one occasion in service.

A VA examination report, dated in July 2001, noted chronic paravertebral myositis.

In a neurological examination report dated in May 2005 the Veteran reported that he developed low back pain around 1990 while lifting at work.

The Veteran was afforded a VA medical examination in November 2010. The Veteran was noted to have lumbar pain beginning in the 1990's. After examination the Veteran was relevantly diagnosed with lumbar strain. The examiner rendered the opinion that the condition was less likely than not related to service connected conditions of degenerative joint disease in the shoulders, elbows, wrists, knees, and ankles. The biomechanics of the lumbar area have not been affected in terms of sheer forces, motion, or loading forces by degenerative joint disease in any of the service connected joints. However, the examiner did not provide an opinion regarding whether the Veteran's lumbar strain condition was related to his injury in service.

As such, the Board finds it necessary to afford the Veteran another VA medical examination regarding the etiology of his lumbar strain disability. See Barr v. Nicholson, 21 Vet. App. 303 (2007); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

In a statement dated in December 2012 the Veteran reported that his pain was getting worse on a daily basis. He continued to discuss symptoms of his orthopedic conditions including stiffness; inability to tolerate strong physical activities; inability to bend, squat, or crawl; difficulty walking and climbing stairs; continuous pain even while sitting; and crepitance in his joints. He reported that he his combination of medications and pain caused a loss in stability. The most recent examination regarding his wrists, elbows, knees, and ankles was performed in July 2011 with and addendum in October 2011 and a medical opinion regarding the diagnoses in November 2011. As the most recent examinations are more than three years old and the Veteran has reported that his conditions may have become more severe, the Board finds it necessary to afford the Veteran a contemporaneous VA medical examination. See C.F.R. §§ 4.1, 4.2; Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); 38 Green v. Derwinski, 1 Vet. App. 121 (1991).

The outcome of the remanded claims of entitlement to service connection as well as the remanded claims for higher evaluation may impact upon the outcome of the Veteran's claim of entitlement to a TDIU. As such, these issues are inextricably intertwined. Harris v. Derwinski, 1 Vet. App. 180 (1991). Therefore, the Board may not adjudicate the issue of entitlement to TDIU until the issues of entitlement to service connection for a psychiatric disability and lumbar strain as well as entitlement to higher evaluations for bilateral wrists, elbows, knees, and ankles are resolved.

The Veteran reported in December 2012 that he continued to receive treatment from VA. Records dated since February 2013 have not been obtained and associated with the claims file. On remand, obtain and associate VA treatment records dated since February 2013. 38 C.F.R. § 3.159.

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file VA treatment records dated since February 2013. Any additional pertinent records identified by the appellant during the course of the remand should also be obtained, following the receipt of any necessary authorizations from the appellant, and associated with the claims file.

2. Then, accord the Veteran an appropriate VA examination to determine the nature, extent, and etiology of any diagnosed psychiatric disorder that he may have. His claims file, including a copy of this remand, must be made available to the examiner for review in connection with the examination. All indicated tests should be conducted, and the reports of any such studies should be incorporated into the examination report to be associated with the claims file.

The examiner is requested to obtain a detailed history of the Veteran's symptoms as observed by him and others since service, review the record, and offer opinions as to the following questions:

(a) The examiner must identify all currently diagnosed chronic psychiatric disorders.

(b) Provide an opinion as to whether it is at least as likely as not (probability of 50% or greater) that any currently diagnosed psychiatric disorder was first manifested in service and/or is causally related to event(s) in service?

(c) If (b) is answered no, is it at least as likely as not (probability of at least 50 percent) that any currently diagnosed psychiatric disorder is proximately due to (caused by) any service-connected disability?

(d) If (c) is answered no, is it at least as likely as not (probability of at least 50 percent) that any currently diagnosed psychiatric disorder has been aggravated by any service-connected disability?

The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare-up of symptoms, beyond its natural progression. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of psychiatric disorder (i.e., a baseline) before the onset of the aggravation.

The examiner is requested to provide a complete rationale for any opinion expressed, based on the examiner's clinical experience, medical expertise, and established medical principles. 

Note: if the examiner concludes that any of the requested opinions cannot be provided without resort to speculation, the examiner should so state and explain why these opinions would be speculative and what, if any, additional evidence would permit such opinions to be made.

3. Then, accord the Veteran an appropriate VA examination to determine the nature, extent, and etiology of any lumbar spine disorder that he may have. His claims file, including a copy of this remand, must be made available to the examiner for review in connection with the examination. All indicated tests should be conducted, and the reports of any such studies should be incorporated into the examination report to be associated with the claims file.

The examiner is requested to obtain a detailed history of the Veteran's symptoms as observed by him and others since service, review the record, and offer opinions as to the following questions:

(a) The examiner must identify all currently diagnosed lumbar spine disorders.

(b) Provide an opinion as to whether it is at least as likely as not (probability of 50% or greater) that any currently diagnosed lumbar spine disorder was first manifested in service and/or is causally related to event(s) in service?

(c) If (b) is answered no, is it at least as likely as not (probability of at least 50 percent) that any currently diagnosed lumbar spine disorder is proximately due to (caused by) any service-connected disability?

(d) If (c) is answered no, is it at least as likely as not (probability of at least 50 percent) that any currently diagnosed lumbar spine disorder has been aggravated by any service-connected disability?

The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare-up of symptoms, beyond its natural progression. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of psychiatric disorder (i.e., a baseline) before the onset of the aggravation.

The examiner is requested to provide a complete rationale for any opinion expressed, based on the examiner's clinical experience, medical expertise, and established medical principles. 

Note: if the examiner concludes that any of the requested opinions cannot be provided without resort to speculation, the examiner should so state and explain why these opinions would be speculative and what, if any, additional evidence would permit such opinions to be made.

4. Thereafter, schedule the Veteran for an appropriate VA examination(s) to determine the nature, extent and severity of his service-connected bilateral wrist, elbow, knee, and ankle disabilities. The claims folder and copies of all pertinent records should be made available to the examiner(s). All indicated tests should be performed. The examiner(s) is requested to delineate all symptomatology associated with, and the current severity of, the bilateral wrist, elbow, knee, and ankle disabilities. The appropriate Disability Benefits Questionnaire (DBQs) should be filled out for this purpose, if possible. The examiner should comment on the functional impairment of the Veteran's disabilities.

5. Thereafter, readjudicate the issues. If the benefits remain denied, the Veteran and his representative should be provided a supplemental statement of the case and given an appropriate opportunity to respond. The case should then be returned to the Board for further consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs